# EXHIBIT M

# ANALYSIS AND REPORT OF POLICE PRACTICES EMPLOYED BY NEW JERSEY TRANSIT AND THE NEW JERSEY TRANSIT POLICE DEPARTMENT

PERTAINING TO:

Danielle M. Tramontano vs. New Jersey Transit
Daniel Gilmartin vs. New Jersey Transit
Anthony Pascale vs. New Jersey Transit
CIVIL ACTION NO: 14-CV 05706
UNITED STATES COURT DISTRICT
OF NEW JERSEY

SUBMITTED TO:

COFFEY, KAYE, MYERS & OLLEY
ATTORNEYS AT LAW
TWO BALA PLAZA SUITE 718
PHILADELPHIA, PA 19004-1514

DATE: NOVEMBER 16, 2017

PREPARED BY:

MICHAEL R. COAN
MRC PROFESSIONAL SECURITY SERVICES

# I. BACKGROUND AND QUALIFICATIONS:

I am a seasoned law enforcement professional with 35 years of experience including senior executive positions at the New York City Police Department and as the head of the police department at the nation's largest and most complicated transportation authority, the NYS Metropolitan Transportation Authority, (MTA).

In January 1982, I was appointed a police officer in the New York Police Department (NYPD). During my tenure with the NYPD I attained the rank of Deputy Chief serving in distinguished positions with the Chief of Detectives, the Public Information Office, and Counter Terrorism Bureau.

In 2008, I assumed leadership of the Metropolitan Transportation Authority Police Department, (MTA PD). The MTA PD provides for the safety and security of the largest and second largest railroads in the nation, the Long Island and the Metro North Railroads. In addition the MTA PD polices the Staten Island Rapid Transit System. Combined security is provided for over six- hundred thousand daily commuters covering over forty seven hundred square miles in two states, New York and Connecticut.

In January 2017, having retired from Law Enforcement I began consulting on security and law enforcement policies and practices.

Having led the MTA PD for over eight years I implemented crime prevention strategies and security oversight for existing facilities and new construction. I oversaw the opening of a state of the art communications and real-time video command center. I was part of a team of security experts providing recommendations on the largest transportation project in the country, East Side Access which will link the Long Island and Metro North Railroads.

I have planned and implemented security for large scale events such as New Year's Eve at Times Square, and the country's busiest transportation facilities, including Grand Central Terminal and Penn Station New York.

My Professional Experience includes:

**Policy and Procedure**:
Under my leadership the MTA PD was the first department to receive Accreditation, by the New York State Division of Criminal Justice, that served in two states, New York and Connecticut.

**Training**:
During my tenor the MTA PD deployed fifty explosive trained canines and provided training for multiple Law Enforcement agencies including the NYPD, County Sheriffs, and Federal Parks Police. Active Shooter training was provided for Police Officers and civilian members of the MTA. I directed that all members of the Department receive training in Incident Command and response to serious events.

**Crisis Management**:

I have extensive experience in crisis management, risk and security assessment, facility safety and protection, emergency preparedness and response. In the lead up and aftermath of Superstorm Sandy I directed and coordinated the security efforts and was instrumental in the restoration efforts of MTA's transportation network.

**Crime Strategies**:
I developed crime control strategies and coordinated resources with local and federal law enforcement enhancing the safety and security of over six hundred thousand daily commuters. During my tenure with the MTA PD an average of less than one crime a day was reported as measured by the FBI Uniform Crime Reporting Program.

My expertise has developed over my thirty-five-year law enforcement career. This experience has provided me with extensive personal knowledge of police operations and generally accepted police practices, as well as police practices specific to the rail and public transportation industry. In addition, I have participated in seminars and continued education through memberships in several organizations including the International Association of Chiefs of Police, NYPD Shield, American Society for Industrial Security, N.Y. State Chiefs of Police, and the Police Executive Research Forum.

**Professional Certainty**:
The body of knowledge I have reviewed, coupled with my experience and interaction with numerous law enforcement professional form the foundation of the opinions I render in this matter. These opinions and conclusions are based upon the foregoing as well as my experience, knowledge, training, and education that are listed in the attached Curriculum Vitae and are all rendered within a reasonable degree of professional and law enforcement certainty.

## II. OPERATING ASSUMPTIONS:

This report has been prepared pursuant to a request of Coffey, Kaye, Myers & Olley. It constitutes my preliminary evaluation within a reasonable degree of professional and law enforcement certainty. It is based upon a review of listed items supplied to me by Coffey, Kaye, Myers & Olley as well as my own documents pertaining to police practices and procedures. I reserve the right to supplement this report consistent with information that becomes available and that I receive. Currently, I possess sufficient information to render opinions in this case.

I have examined the actions and procedures of New Jersey Transit and the New Jersey Transit Police Department, (NJTPD) and the opinions rendered are based upon the facts and documents in my possession to date.

This report is based on a review of the following materials:

A. Plaintiffs Complaint
B. Defendants Answer to Plaintiffs Complaint
C. NJTPD Investigation reports
D. NJTPD Voluntary statements

E. NJTPD Report of Personal Injury
F. NJ Transit statement forms
G. NJ Transit Investigation Reports
H. NJ Transit Reports of Personal Injury
I. NJ Transit Investigation Reports
J. NJTPD Computer Aided Dispatch (CAD) Blotter
K. Deposition Transcripts of Testimony
L. Other items produced during discovery

## III. CASE SUMMARY

On Sunday, July 21, 2013, plaintiffs conductors Danielle Tramantano, Daniel Gilmartin and engineer Anthony Pascale, all New Jersey Transit Employees, were working train 7273 traveling from New York to Long Branch, N.J. On this day the annual Columbian Festival Day was taking place in Elizabeth NJ. This event celebrates the independence of Columbia. In 2011 it was recognized as the largest Hispanic festival on the East Coast with over two hundred thousand annual attendees. At approximately 8:30 PM, prior to arrival of train 7273 at Elizabeth Station, an engineer on another train, Chris Zapille, transmitted to NJ Transit Rail Operations, through AMTRAK communications, a complaint and a warning of overcrowding at the station and that the crowd appeared unruly. This information was not passed onto train 7273. NJT PD CAD Blotter indicates that NJT PD officer Giovannone was dispatched at 8:32 PM to the Elizabeth Station; however, there is no record that he arrived. At approximately 8:43 PM the plaintiffs train did in fact stop at the Elizabeth Station and an estimated eighty people boarded the first car. This crowd was not only large but was loud, boisterous, and unruly. There was no police presence at the station.

The train proceeded to Linden, Rahway, and Woodbridge Station. Danielle Tramantano worked the lower half of the car collecting fares and Daniel Gilmartin worked the upper half. Anthony Pascale was operating the train from the cab in the first car. At each station stop the crew looked on the platform for police but none were present. As the train proceeded the passengers in the first car became more unruly and threatening. Upon leaving Woodbridge Station, heading to Perth Amboy, the passenger behavior escalated, and Anthony Pascale heard someone yell out "hit him." It was apparent that a physical altercation had begun. Mr. Pascale called for police assistance. NJT PD CAD Blotter indicates at 9:09 PM Perth Amboy PD were responding, and NJT PD officer Giovannone is dispatched at 9:12 PM to Perth Amboy Station.

During the assault a woman with two children were caught in the middle of it. With the train now stopped at Perth Amboy, both Danielle Tramantano and Daniel Gilmartin attempted to extricate the family from the assaulting passengers. Anthony Pascale also came to their aid. At this time all three crew members were assaulted. The assault only ended when they were able to retreat into the cab of the train. Once in the cab a passenger opened the emergency release handle and jumped onto a live track. Danville Tramantano and Daniel Gilmartin had to leave the cab and entered the tracks to remove this individual to prevent him from suffering serious injury. The individual was not cooperative and resisted until the Perth Amboy Police arrived.

Upon the arrival of the Perth Amboy PD seven arrests were made, charges ranging from aggravated assault, interfering with transportation, theft of credit cards and simple assault. Perth Amboy PD. made all arrests at 9:36 PM. According to the Cad Blotter Perth Amboy PD had numerous individuals under arrest and it reported that three crew members were assaulted. The CAD Blotter also indicates Officer Giovannone arriving at 9:36 PM; the first NJT PD response since the initial call at 8:30 PM.

## IV. OPINIONS

It is clear that from the initial observation by engineer Chris Zapille and his call to NJ Transit that police assistance was needed, based on the size and behavior of the crowd at the Elizabeth Station. However, it was at least one entire hour until Police assistance responded and when they did it was the Perth Amboy police who arrived first on the scene. There was no police presence on any of the station platforms, on the train, and no response until the train arrived at Perth Amboy. By that time the situation had already deteriorated resulting in injuries to the crew members. Furthermore, no prior information or precautions were given by NJ Transit or the NJTPD warning of potentially large crowds due to the Columbian festival even though 2013 was the tenth year of the festival and in the previous two years had attracted large crowds in excess of two hundred thousand people.

The NJTPD neither provided additional officers to provide for the safety of passengers or crew members nor did they coordinate security efforts with local authorities. NJT PD has no records of any planning, evaluation, or assessment of the impact the Columbian Festival would have on transportation or police services.

A police presence cannot always guarantee that no crimes or incidents will take place. However, in the case of a pre-planned annual event that draws a large number of participants, many of whom will utilize mass transit, it is law enforcement's responsibility to properly plan, deploy resources, and be prepared to adequately respond.

It is my opinion, made with a reasonable degree of professional and law enforcement certainty, that:

- The NJT PD's failure to provide basic security and police services to meet the demands of an event on the scale of the Columbian Day festival, created a dangerous situation where an unruly group of passengers became violent and injured the plaintiffs.

- NJT PD acted unreasonably and contrary to accepted police standards and procedures when it failed to ensure that Elizabeth station would have any police presence on July 21, 2013. Officers working during the time of the event were not informed or directed to respond to the station.

- There is no indication that NJT and/or NJT PD responded to the initial call at Elizabeth Station of a large and unruly crowd. This failure to respond to the initial call at Elizabeth Station was unreasonable and contrary to accepted police standards and procedures.

- NJT and/or NJT PD acted unreasonably and contrary to accepted police standards and procedures when it failed to provide adequate security a police presence or response on train 7273 or any station platforms between Elizabeth and Perth Amboy.

- NJT and/or NJT PD acted unreasonably and contrary to accepted police standards and procedures when it failed to plan or provide adequate security for an annual event on the size and scope of the Columbian Festival.

- NJT and/or NJT PD acted unreasonably and contrary to accepted police standards and procedures when it failed to assess the impact of the Columbian Day Festival on the police resources and failed to coordinate with local Law Enforcement to adequately police the event.

- NJT and/or NJT PD acted unreasonably and contrary to accepted police standards and procedures when it failed to provide any information to NJT train crews working on the day of the event to warn of potentially large crowds and the impact on rail resources and how to best protect themselves and their passengers in light of such crowds.

- NJT and/or NJT PD acted unreasonably and contrary to accepted police standards and procedures when it failed to adhere to the NJ TRANSIT RAIL Safety Policy as set forth in the NJ Transit Manual.

- NJT and/or NJT PD acted unreasonably and contrary to accepted police standards and procedures when it failed to train its train employees on how to respond when faced with a threatening passenger or crowd and self-defense.

- In light of NJT and/or NJT PD's failures, NJT also acted unreasonably in failing to provide its train employees with self-defense devices such as pepper spray or electric-shock weapons.

## IV. Evaluation and Basis of Opinion

It is my opinion that the events which led to the assault of the plaintiffs would have been prevented with proper planning for a large-scale event. Planning would have provided adequate deployment of personnel, coordination with local law enforcement and for the security and safety of NJT passengers and crews.

Leading up to the event on July 21, 2013 there is no record of any meetings, emails, or any notification or correspondence within the NJT PD concerning the Colombian Day Festival. There is no record of a General Order describing the event or requesting additional personnel, electronic surveillance. There is no record of mutual aid discussions or agreements. There is no record of an assessment by the Intelligence unit or any counter terrorism measures.

According to the deposition of Lieutenant Kevin Mooney, a sergeant at the time supervising the officers that were assigned during the event, he stated he was not aware of any prior problems dealing with large numbers of passengers at the Elizabeth station. He was not apprised on the day in question about unruly passengers at Elizabeth station the morning of the event (pg. 22-25). In fact, Elizabeth Station was not listed on the Directed Patrol list which ensures the station is checked at least once a tour by an officer (pg. 54). According to the CAD Blotter, twenty-seven Directed Patrols were conducted on July 21, 2013; however, none were performed at the Elizabeth station.

Lt. Mooney also stated that eight officers is the minimum number of officers that has been established to work the tour. On the day of the event the minimum number of officers were assigned, (pg. 26-29). The roll call indicated four officers assigned to posts inside Newark Penn Station and four officers assigned individually in a patrol car. The minimum number was established by the then commanding officer Chief Laura Hester, at the time an Inspector (pg. 26).

According to the deposition of Deputy Chief Laura Hester, she stated that prior to July 2013 she had never heard of the Columbian Day Parade (pg. 52).

Captain Robert Noble, in charge of the Special Operations Division at the time, which comprised of K9, Emergency Services, Office of Emergency Management, Counter Terrorism Unit and Train Patrol was also deposed. Captain Noble noted a number of events where he assigns officers, Parades, Papal Visit, Super Bowl, Wrestle Mania, based on sheer volume of people, continuing that his specific mission is counterterrorism. The deployment would include officers on the platforms, uniform and plainclothes, portable cameras and sky watch. (pg. 30-33)

Captain Noble was asked whether he had any conversations with any police department commanders and heads of departments about the Columbia Day Parade prior to 2013 and he answered "No." (pg. 30).

On July 21, 2013, according to the roll call provided, NJT PD Officer Christopher Giovannone was the sole officer assigned to the North Jersey Coastline and the Northeast Corridor, a large geographical area covering over twenty stations. Officer Giovannone had no records, notes and did not recall his specific assignment on the date in question. (pg. 22). When asked if he was given any instruction from anybody to check on the Elizabeth Station July 21, 2013 before the occurrence with the 7273 crew, he responded I don't recall. (pg. 47).

A review of the Roll Call assignments showed Officer Giovannone was working from 3:00 PM until 1 AM. The CAD Blotter showed Officer Giovannone had an assignment between 5:19 PM and 6:47 PM. He showed no other activity until the call at 8:32 PM.

A review of the Investigation report prepared by Officer Giovannone indicates that by the time of his response to the call at Perth Amboy station, the Perth Amboy Police had already deescalated the situation. The report further indicates that the Perth Amboy Police Department made all arrests.

Edward Bruce, Director of Intelligence, NJT PD stated in his deposition that he is responsible for the collection and analysis of all criminal and terrorism threats to the New Jersey Transit system. He also has responsibility of the NICE vision cameras. NJT has approximately five thousand NICE vision cameras. He went on to say there were no NICE vision cameras at Elizabeth station at the time of the incident; however, shortly after the incident cameras were placed at the station. He also stated that he did not recall receiving a request to have cameras at the Elizabeth Station during the day of the Columbian Festival in 2013, (Pgs. 6-9).

## V. Conclusion:

The failure of the NJT PD to prepare for the July 21, 2013 Colombian Day Festival and lack of response to calls for assistance created an unsafe environment in which unruly passengers on a crowded train overwhelmed and assaulted plaintiffs, Danielle Tramantano, Daniel Gilmartin and Anthony Pascale. Due to the inactions of NJT and/or NJT PD the plaintiffs were left on their own to provide for their own safety and that of the passengers, putting themselves in harm's way and in the process getting assaulted. Even though left on their own, no security training or protective devices were provided.

NJT PD neglected to assess the impact the Columbian Day Festival would have on the Rail operations and the safety of passengers and crew members. In fact, at all levels of the department from the Commanding Officer responsible, the Director of Intelligence, Commander of the Special Operations Division, Ranking supervisor on the day of the event to the officer assigned to the impacted station, they claimed a complete lack of awareness that any event was taking place. To make matters worse once the NJT PD became aware of overcrowding and unruly passengers the response was delayed and inadequate.

Based upon my professional experience and review of provided material it is my opinion within a reasonable degree of professional and law enforcement certainty that the NJT PD had the resources available and the ability to become aware of and plan for an event the size and scope of the Columbian Day Festival on July 21, 2013. An essential element of safety and security is the ability to be proactive in planning for a scheduled event. Elizabeth, New Jersey is the state's fourth largest city and New Jersey Transit and NJT PD provide a vital service to that community. It is incumbent on the NJT PD at all levels to be knowledgeable of the community in which they serve. That awareness must begin at the executive levels and then filter down through the ranks. At every level within the NJT PD there was a failure of awareness and acknowledgment of a major event taking place within their jurisdiction.

The failure, lack of awareness and neglect on July 21, 2013 directly caused the unsafe conditions on the Elizabeth Station platform and the unsafe conditions that continued on train 7273. The behavior of the passengers and eventual assault of the crew members could have been prevented with proper planning and response by NJT PD as evidenced by the fact that once the Perth Amboy Police responded the condition was brought under control and the assailants arrested.

In summary, NJT and/or NJT PD acted unreasonably and contrary to accepted police standards and procedures and this was a major cause of the July 21, 2013 assault on plaintiffs conductors Danielle Tramantano, Daniel Gilmartin and engineer Anthony Pascale.

Based upon my professional experience and review of provided material it is my opinion within a reasonable degree of professional and law enforcement certainty that the NJT PD had the resources available and the ability to become aware of and plan for an event the size and scope of the Columbian Day Festival on July 21, 2013. An essential element of safety and security is the ability to be proactive in planning for a scheduled event. Elizabeth, New Jersey is the state's fourth largest city and New Jersey Transit and NJT PD provide a vital service to that community. It is incumbent on the NJT PD at all levels to be knowledgeable of the community in which they serve. That awareness must begin at the executive levels and then filter down through the ranks. At every level within the NJT PD there was a failure of awareness and acknowledgment of a major event taking place within their jurisdiction.

The failure, lack of awareness and neglect on July 21, 2013 directly caused the unsafe conditions on the Elizabeth Station platform and the unsafe conditions that continued on train 7273. The behavior of the passengers and eventual assault of the crew members could have been prevented with proper planning and response by NJT PD as evidenced by the fact that once the Perth Amboy Police responded the condition was brought under control and the assailants arrested.

In summary, NJT and/or NJT PD acted unreasonably and contrary to accepted police standards and procedures and this was a major cause of the July 21, 2013 assault on plaintiffs conductors Danielle Tramantano, Daniel Gilmartin and engineer Anthony Pascale.

MICHAEL R. COAN

November 21, 2017